UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

NO. 12-5149
_____
_____

BECKY ROBERTS

Plaintiff-Appellant

v.

UNITED STATES OF AMERICA, et al.

Defendant - Appellee
_____


APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA, NO. 11-0706, JOHN D. BATES,
United States District Judge
_____


ORIGINAL BRIEF OF APPELLANT BECKY ROBERTS
_____


ATTORNEY FOR APPELLANT
John B. Wells
Attorney for Appellant
DC CIR. #54096
P. O. Box 5235
Slidell, LA 70469-5235
769 Robert Blvd, Suite 201D
Slidell, LA 70458
985-641-1855
985-649-1536 (fax)
JohnLawEsq@msn.com

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 12-5149

(C.A. No. 11-0706)

BECKY ROBERTS, Appellant,

v.

UNITED STATES OF AMERICA, et al., Appellees.

## <u>APPELLANT'S CERTIFICATE OF COUNSEL AS TO PARTIES, RULINGS, AND RELATED CASES</u>

Pursuant to this Court's **May 11, 2012,** Order and Circuit Rule 28(a)(1), counsel for the Appellant file this certificate as to parties, rulings, and related cases.

## I.  Parties

The Appellant in this matter is Becky Roberts, a natural person, who was the plaintiff in the District Court.

The Appellees are the United States of America, Raymond Edwin Mabus, Jr., in his capacity as Secretary of the Navy, and the Chairman of the Board For Correction of Naval Records, who were the defendants below. There is no amicus curiae known at this time.

## II.   Rulings Under Review

At issue in this appeal is the **March 23, 2012** Order and Memorandum Opinion of the Honorable John D. Bates, granting defendant's motion for dismissal or, in the alternative, for summary judgment and denying plaintiff's cross-motion for summary judgment based on the administrative record.

## III.   Related Cases

This case has not previously been before this Court and to the best of Appellant's knowledge there are no related cases.

Respectfully Submitted,

/s/ John B. Wells
John B. Wells
Bar #54096
P. O. Box 5235
Slidell, LA 70469-5235 (mail)
769 Robert Blvd., Ste 201D
Slidell, LA 70458 (physical)
985-641-1855
985-649-1536 (fax)
JohnLawEsq@msn.com

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Circuit Rule 26.1, counsel for the Appellant files this corporate disclosure statement.

The Appellant in this matter is Becky Roberts, a natural person and is not a corporation, association, joint venture, partnership, syndicate, or other similar entity within the scope of Circuit Rule 26.1

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The instant case involves issues of military policy and procedures which may be foreign to those with little military or naval experience.  The impact of military directives and their implementing instructions can best be explored in an oral argument setting.  Given the general unfamiliarity with the military's approach to Constitutional issues, including discrimination and due process, oral argument could shed light on the actions behind the military's action.  Familiarity with the Board for Correction of Naval Records and its application of the arbitrary and capricious and substantial evidence may be of further benefit to the Court. Counsel for the Appellant is a retired Navy Commander and may be able to provide needed insight into the world of the military.  Commander Roberts therefore urges this Court to grant oral argument.

# **TABLE OF CONTENTS**

Appellant's Certificate of Counsel as to Parties, Rulings, and Related Cases . . . . .  i

Corporate Disclosure Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  v

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vii

Glossary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  xii

Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Statement of Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

I.     The Court below Erred in Their Finding That Roberts Did Not Enjoy a
       Due Process Right to a Fair Evaluation under the Navy's Fitness Report
       System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

II.    The Court Below Erred in Their Finding That Roberts Did Not Assert an
       Actionable Claim of Gender Discrimination . . . . . . . . . . . . . . . . . . . . . . .  20

III.   The Court Below Erred in Their Finding That the Actions of the Board for
       Correction of Naval Records Was Not Arbitrary and Capricious . . . . . . .  27

IV.     The Court Below Erred in Their Finding That the Actions of the Board for
        Correction of Naval Records Were Supported by Substantial Evidence. .  34

V.      The Court Below Erroneously Rejected a Special Selection Board. . . . .  40

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Statutory Addendum. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

## TABLE OF AUTHORITIES

**Cases**:

* *Adair v. England*, 183 F.Supp.2d 31 (D. D.C.2002). . . . . . . . . . . . . . . . . . . 13, 28

* *Adkins v. Rumsfeld,* 464 F.3d 456 (4th Cir. ,2006). . . . . . . . . . . . . . . . . . . . . . 15

*Antonuk v. United States*, 445 F.2d 592 (6th Cir. 1971).. . . . . . . . . . . . . . . . . . 16

*Bell Atlantic Corp. v. Twombly* 550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . 11

* *Berkley v. United States*, 287 F.3d 1076 (Fed. Cir. 2002). . . . . . . . . . . . . . . . . 21

*Board of Regents v. Roth*, 408 U.S. 564 (1972). . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bolling v. Sharpe*, 347 U.S. 497 (1954). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Bowen v. American Hosp. Ass'n,* 476 U.S. 610 (1986).. . . . . . . . . . . . . . . . . . . . 36

* *Britell v. United States,* 372 F.3d 1370 (Fed. Cir 2004). . . . . . . . . . . . . . . . . . . 18

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir.2002). . . . . . . . . . . . . . . . . . . . . . 11

*Cone v. Caldera*, 223 F.3d 789 (D.C. Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . 27

*Conley v. Gibson*,  355 U.S. 41 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Correa v. Clayton*, 563 F.2d 397 (9th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . 14

*Dent v. State of West Virginia*, 129 U.S. 114 (1889). . . . . . . . . . . . . . . . . . . . . 14

*Dilley v. Alexander*, 603 F.2d 914 (D.C. Cir. 1979).. . . . . . . . . . . . . . . . . . . . . . 34

**Authorities upon which we chiefly rely are marked with  asterisks**

*Estate of Col–Monge v. Inner Peace Movement*, 524 F.3d 1341(D.C.Cir. 2008). 10

*Ferrell v. Secretary of Defense*, 662 F.2d 1179 (5th Cir. 1981).. . . . . . . . . . . . . 12

*Flack v. Cohen,* 413 F.2d 278 (4th Cir. 1969). . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Government of Canal Zone v. Brooks*, 427 F.2d 346 (5th Cir. 1970). . . . . . . . . . 16

*Hayden v. Nassau,* 180 F.3d 42 (2d Cir.1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Heisig v. United States,* 719 F.2d 1153 (Fed. Cir. 1983). . . . . . . . . . . . . . . . . . . . 12

*Holley v. United States*, 124 F.3d 1462 (Fed. Cir. 1997). . . . . . . . . . . . . . . . . . . . 16

*Hoskins v. United States,* 40 Fed.Cl. 259 (Fed. Cl.1998).. . . . . . . . . . . . . . . . . . 12

*Hughes River Watershed Conservancy v. Johnson*, 165 F.3d 283 (4th Cir.1999). 29

*Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324
(Fed. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271 (D.C. Cir.1994).. . . . . . . . . . . . . . 11

*Kreis v. Sec'y of the Air Force*, 866 F.2d 1508 (D.C. Cir. 1989). . . . . . . . . . . . . . 27

*Marsh v. Oregon Natural Res. Council,* 490 U.S. 360 (1989). . . . . . . . . . . . . . . . 36

*McDonald v. McLucas* 371 F.Supp. 831 (D.N.Y. 1974). . . . . . . . . . . . . . . . . . . . 15

* *Michigan Gambling Opposition (MichGO) v. Norton* 477 F.Supp.2d 1 (D. D.C.
2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

* *Milena Ship Management Company v. R. Richard Newcomb*, 995 F.2d 620 (5th
Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Moberly ex rel. Moberly v. Secretary of Health and Human Services,* 85 Fed.Cl.
571 (Fed.Cl. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

viii

* *Motor Vehicles Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

* *Murphy v. United States*, 993 F.2d 871 (Fed. Cir. 1993).. . . . . . . . . . . . . . . . . 12

* *Muse v. United States*, 21 Cl. Ct. 592 (1990).. . . . . . . . . . . . . . . . . . . . . 19, 20, 34

*North Carolina Fisheries Ass'n, Inc. v. Gutierrez* 518 F.Supp.2d 62 (D.  D.C. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Parrish v. Brownlee*, 335 F. Supp. 2d 661 (E.D.N.C. 2004). . . . . . . . . . . . . . . . . 16

*Perrin v. United States*, 444 U.S. 37 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Peters v. Hobby*, 349 U.S. 331 (1955). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Renicker v. United States*, 17 C. Ct. 611 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Richards v. INS,* 554 F.2d 1173 (D.C. Cir.1977). . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Richardson v. Perales,* 402 U.S. 389 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Roelofs v. Secretary of Air Force*, 628 F.2d 594 ( D. C. Cir. 1980).. . . . . . . . . . . 30

*Sargisson v. United States,* 913 F.2d 918 (Fed. Cir. 1990). . . . . . . . . . . . . . . . . . 12

*Schware v. Board of Bar Examiners*, 353 U.S. 232 (1957). . . . . . . . . . . . . . . . . . 15

*Sierra Club v. Mainella* 459 F.Supp.2d 76 (D. D.C. 2006). . . . . . . . . . . . . . . . . . 11

*Thomas v. Celebrezze,* 331 F.2d 541(4th Cir.1964). . . . . . . . . . . . . . . . . . . . . . . . 36

* *United Mine Workers of America, Intern. Union v. Dole* 870 F.2d 662 (D.C. Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

\* *United States v. Virginia,* 518 U.S. 515 (1996). . . . . . . . . . . . . . . . . . . 15, 23, 38

\* *Vill. Of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S.252 (1977).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Voge v. United States*, 844 F.2d 776 (Fed. Cir. 1988). . . . . . . . . . . . . . . . . . . . 12

**Statutes:**
5 U.S.C. § 555. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

5 U.S.C. § 706. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 36

10 U.S.C. § 628. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

10 U.S.C. § 1552. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 41

10 U.S.C. § 1556. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

U. S. CONST. AMND. V. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 16. 20, 29

U. S. CONST. AMND. VI.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Other Authorities:**
*Black's Law Dictionary*, 6th Ed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

BUPERSINST 1610.10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

D.C. Circuit Rule 26.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DOD Directive 1350.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 26

x

Federal Rule of Civil Procedure Rule 12(b)(6)................................. 10

Federal Rule of Civil Procedure Rule 56c. ............................... 11

ONI Instruction 1610.2................................................ 3

SECNAVINST 1420.1B. ........................................ 40, 41

U.S. Navy Regulations, Article 1129. ........................... 18, 19, 33

*Webster's Third New Int'l Dictionary* (1993)............................ 22

# **GLOSSARY**

BCNR... . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Board for Correction of Naval Records

BUPERS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Bureau of Naval Personnel

CDR. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Commander

CHNAVPERS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Chief of Naval Personnel

CMC.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Commandant of the Marine Corps

CNO. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Chief of Naval Operations

DCNO. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Deputy Chief of Naval Operations

DOD.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Department of Defense

FITREP. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Fitness Report

MPTE.. . . . . . . . . . . . . . . . . . . . .  Manpower, Personnel, Training and Education

ONI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Office of Naval Intelligence

OPNAV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Chief of Naval Operations Staff

SECNAV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Secretary of the Navy

## Statement of Jurisdiction

This Court has jurisdiction under 28 U.S.C. § 1291 concerning a final decision by a district court. Jurisdiction rested in the court below under the Administrative Procedures Act, 5 U.S.C. § 706 and 10 U.S.C. § 1552. The Court had jurisdiction over all parties pursuant to 28 U.S.C. § 1331. A timely notice of appeal was filed from that court's decision on May 9, 2012. The judgment of the District Court was entered on March 23, 2012. This appeal is from a final order or judgment that disposes of all parties' claims.

## Statement of Issues

I.      The Court Below Erred in Their Finding That Roberts Did Not Enjoy a Due Process Right to a Fair Evaluation under the Navy's Fitness Report System.

II.     The Court Below Erred in Their Finding That Roberts Did Not Assert an Actionable Claim of Gender Discrimination.

III.    The Court Below Erred in Their Finding That the Actions of the Board for Correction of Naval Records Was Not Arbitrary and Capricious.

IV.     The Court Below Erred in Their Finding That the Actions of the Board for Correction of Naval Records Were Supported by Substantial Evidence.

V.      The Court Below Erroneously Rejected a Special Selection Board.

1

## Statement of the Case

This case is brought against the United States of America, the Honorable Ray Mabus, the Secretary of the Navy, acting in his official capacity and the Chairman of the Board for Correction of Naval Records (BCNR) acting in his official capacity.  The nature of the case is a claim under the Administrative Procedures Act, 5 U.S.C. § 706 and 10 U.S.C. § 1552.

In March of 1999, Roberts first filed a *pro se* petition to the BCNR (docket number 01606-99) which was denied on 25 October 2000.  Commander Roberts filed a second petition in late 2008 with the BCNR (docket number 09966-08) which was denied on 22 December 2009.

On March 26, 2010, Roberts filed suit against the United States in the United States Court of Federal Claims under the Tucker Act.  That court, finding no Tucker Act jurisdiction, transferred the case to the United States District Court for the District of Columbia on April 2, 2011.

## Statement of Facts

Commander Becky Roberts is a Navy Intelligence Officer whose career has been stunted by a misinterpretation of directives on one hand and invidious discrimination on the other.  A decorated officer, she enjoyed a stellar career until she reported to the Office of Naval Intelligence (ONI) on 16 February 1996.  At

2

the time, there was a local directive, ONI Instruction 1610.2, which guided the

preparation of officer fitness reports.  Appx. 63-75.  It was superceded on 19

September 1997 by ONI Instruction 1610.2A.  Appx. 76-82.

At the end of the first fitness report cycle, October 31, 2006, Roberts

received a performance trait average of 4.17.[1]  She was recommended as a "Must

Promote.[2]"  Appx. 57-58.  This was in contravention of the governing ONI

directive which actually required all persons with a trait average of 3.90 and above

to be listed as "Early Promote."  Appx. 66-67.  She did not contest this grade since

she had been on board just eight months.   In June of 1997 however, she received a

"promotable" fitness report from the same reporting senior, upon his detachment

and retirement from the naval service.  Appx. 59-60.   Her promotion

recommendation was downgraded despite the fact that her trait average actually

increased to 4.33.  The "promotable" selection was in direct violation of the

governing local directive.  Appx. 66-67.  She received another report dated

October 31, 1997, from the new reporting senior,  with a "promotable"

--------

[1]  Navy officers are rated from 1 (lowest) to 5 (highest) in a number of areas.
The resulting average is considered the "trait average."

[2]  Promotion recommendations in Navy fitness reports, in order of
precedence are "Early Promote," "Must Promote," "Promotable," "Progressing,"
and "Significant Problems."

recommendation despite a trait average of 3.83. The guiding directive had been revised and under the new instruction this average required a "Must Promote" recommendation. Appx. 79.

The original reporting senior, Captain Bentz, who was the ONI Chief of Staff, conceded that there was no decline in Commander Roberts' performance. Appx. 49-50. Bentz later admitted that he had erred due to unfamiliarity with the changes in the new fitness report system. Appx. 51-52. These admissions were made in November of 2001 and June of 2004, after the initial denial of Commander Roberts' petition by the BCNR.

This curious scenario came about because the governing directive required that no more than fifty percent of the officers be listed in the categories "early promote" and "must promote." Appx. 66. In this case, there were thirteen officers in the ranking category. Seven were listed in the two higher categories and six in the lower "promotable" category. Captain Bentz stated that Commander Roberts' trait average was tied with another officer who had previously been ranked lower than Commander Roberts. He went on to state that he used the promotion category as a means of recognizing the other officer's improvement. Appx. 49.

4

He also acknowledged that billet assignment was a factor, rather than actual performance. *Id*. Bentz further opined that the decline in the fitness report would not be detrimental to future promotions. Appx. 50. Captain Bentz later repudiated that position. Appx. 51-52. The fitness report did include a comment that the "promotable" category did not reflect a decline in performance but that it was based on an increase in the numbers in the rating category. This was not the case, however, as there were thirteen officers in the rating category in both 1996 and 1997. Compare Appx. 60 with Appx 58.

The "promotable" mark dogged Commander Roberts through the next reporting cycle with a new reporting senior. Although her trait average fell to 3.83 (which often happens with a new reporting senior) she was still within the "must promote" criteria of the revised local directive. Appx. 79. Although the number of officers in the rating category increased to sixteen, she still remained in the "promotable" category, because the new reporting senior wished to maintain all officers in the same category during the abbreviated reporting period. Appx 45. There was no explanation of where the three new officers were placed.

Roberts submitted her first petition to the Board for Correction of Naval Records (docket number 01606-99) on March 3, 1999. Appx. 89. This petition was prepared without the assistance of counsel and was denied on 25 October

5

2000.  Concurrent with the submission of this petition, Roberts was deployed

overseas to the staff of Commander, Naval Forces Korea.  Appx. 88.

It was not until the 31 October 1998 fitness report that Commander Roberts

broke back into the "must promote" category, this time with a trait average of

4.00.  Appx. 61-62.   Her detaching fitness report, dated 23 February 1999

reflected an identical trait average of 4.00.  On this occasion she was

recommended for early promotion.  Appx. 45.

As a result of the 1996-97 fitness reports, CDR Roberts was deselected from

a field grade (Command and General Staff), in residence war college billet.  Appx.

46.  Despite these reports she was selected for promotion to Commander (O-5),

but not until the second board.  As a direct result of these reports she was passed

over for Commander by the first selection board to consider her.  Appx. 45-46.

After her detachment from the Office of Naval Intelligence, Commander

Roberts continued to excel.  She reported to Commander Naval Forces Korea and

maintained trait averages of 4.33 and 4.66 and was twice recommended for early

promotion.  Appx 46.  She also received a concurrent report from Commander,

Seventh Fleet with a trait average of 4.50 and an early promotion recommendation.

Her performance onboard the *USS Peleliu* (LHA 5) was even more notable.  As

the ship's intelligence officer she was responsible for the intelligence,

6

cryptological and photographic operations for the ship and embarked staffs.  Her

tour of duty included a Western Pacific deployment, several exercises and

operations to support insertion of the first conventional forces into Afghanistan in

November 2001 in support of Operation Enduring Freedom.  She was a key officer

who provided the needed intelligence support for the principal ship of an

Expeditionary Strike Group, Commander Task Force 51 and two amphibious

squadrons.  She also provided direct intelligence support to the crew and staff of

the *Peleliu*, which was the Amphibious Squadron flagship.  Again she received

"early promote" recommendations  and her trait average exceeded 4.50.  Appx. 46.

In October 2002, Commander Roberts transferred to the Joint Forces

Intelligence Command where she was assigned duties of increasing responsibility.

This included direct support of Joint Forces Command and assignment to Baghdad

in support of United States combat operations.  During this period she earned a

4.50 trait average and an early promotion recommendation in a concurrent fitness

report from an Army Brigadier General. Appx. 47.

Initially, Commander Roberts received her usual stellar fitness reports.  Her

31 August 2003 average computed at 4.33 with an "Early Promote."  Her 31

August 2004 fitness report contained a trait average of 4.50 again with an "Early

Promote."  When the Commanding Officer retired, in May of 2005, however, he

7

rated her "promotable" despite an increase in her trait average to 4.67.  Appx. 48, 90-91, 92-95.

When asked why her fitness report promotion recommendation was downgraded, the reporting section explained that another officer was being screened for a third time by the Commander Sea Screening Board and that he needed to help out "fellow officers."  The reporting senior refused to reconsider his decision.  Appx. 47-48. The "fellow" officer the reporting senior claimed to be helping was a male.  Appx. 47.

Commander Roberts has completed the Senior War College course at the Air War College at Maxwell Air Force Base, graduating *suma cum laude* with the "Warfighter's Certificate" and GPA of 3.7.  Appx. 48.  She has received the following awards:  Defense Meritorious Service Medal, Joint Service Commendation Medal, Meritorious Service Medal,  Navy and Marine Corps Commendation Medal (five awards), Navy and Marine Corps Achievement Medal as well as numerous unit and expeditionary awards.  Appx. 48.

During an investigation by plaintiff's counsel's staff investigator, a number of peers and superiors were interviewed.  They all stated that Commander Roberts' performance was superior to the promotion recommendations delineated in the fitness reports in question.

As a result of the improper fitness reports, Commander Roberts was not selected for Captain by the FY 2009 or 2010 Intelligence Captain (O-6) Selection Board.   She is currently serving on active duty in the grade of Commander.

## Summary of the Argument

The court below based their findings on an unusually deferential standard of review.  Despite the fact that the decision in this case did not represent an operational, tactical or strategic matter, the court below was overly generous in their deference, holding Commander Roberts to an impossible standard.

Commander Roberts was deprived of due process because she enjoyed a protected liberty and property interest in a fair evaluation process.  Mandatory directives at the local, service and Department of Defense level provided her assurances of a level playing field and fitness reports based upon her performance rather than inflexible and incorrect interpretations and invidious discrimination.

One Commanding Officer erred in his interpretation of the local and service wide fitness report directives leading to an improper evacuation.  This reporting senior later admitted this error.  Another reporting senior "froze" all officers in their previous rankings, prolonging the other officer's error.   Another officer downgraded Commander Roberts based on invidious discrimination.

The record shows arbitrary actions and capricious actions by reporting

9

seniors and the Board for Correction of Naval Records (BCNR). These included a failure to make a rational decision or to provide a reasoned basis for that decision. Regulations at all levels were flaunted, ignored or misinterpreted leading to irrational decisions that were merely "rubber stamped" by the correction board. Despite significant and substantial evidence to the contrary, the correction board and the court below refused to correct the obvious injustices in this case.

Correction and/or removal of the fitness reports in question should result in a referral for a special selection board. This is the proper remedy to ensure that Commander Roberts is allowed to compete on a level playing field based on her performance. This can only be served by the reversal of the district court's decision.

## Argument

## Standard of Review

This court reviews Motions to Dismiss and Motions for Summary Judgment *de novo,* applying the same standard of review as that of the District Court. *Estate of Col–Monge v. Inner Peace Movement,* 524 F.3d 1341, 1346 (D.C.Cir. 2008). A dismissal of claims under Federal Rule of Civil Procedure 12(b)(6) is appropriate if it appears beyond doubt that plaintiff can prove no set of facts in support of their claim which would be entitle them to relief. *Conley v.*

*Gibson*, 355 U.S. 41, 45-46 (1957). The complaint's factual allegations are accepted as true and the plaintiff is given the benefit of all inferences that can reasonably be drawn therefrom. *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir.2002). A court should not accept inferences that are unsupported by the facts set out in the complaint, nor will it accept legal conclusions cast in the form of factual allegations. *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir.1994). A claim requires a complaint with enough factual matter (taken as true) to establish the claim. *Bell Atlantic Corp. v. Twombly* 550 U.S. 544 (2007).

Summary Judgment based on the administrative record does not require the fact finding normally required in a summary judgment motion. What it does require is that the court ascertain whether the administrative record supports the agency's decision. *North Carolina Fisheries Ass'n, Inc. v. Gutierrez* 518 F.Supp.2d 62, 79 (D. D.C. 2007). In other words, Rule 56c does not apply because the district court has a limited role in reviewing the administrative record. *Sierra Club v. Mainella* 459 F.Supp.2d 76, 89 (D. D.C.,2006). Accordingly, summary judgment serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id. See, also*, *Richards v. INS,* 554 F.2d 1173, 1177 & n. 28 (D.C. Cir.1977).

11

Judicial review of military service determinations is available when the agency's action was arbitrary, capricious, in bad faith, unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which the complainant has been prejudiced. *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed. Cir. 1983).

When, as here, there are identifiable and measurable tests and standards promulgated by the Secretary, judicial review of those tests and standards are justiciable. *Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir. 1988). *See also*, *Hoskins v. United States,* 40 Fed.Cl. 259 (Fed.Cl.1998); *Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993). These standards include the Constitution and laws of the United States, case law promulgated by both civilian and military courts, and military directives. It is well settled that military departments are also required to follow their own procedural regulations once they have been implemented. *Sargisson v. United States*, 913 F.2d 918, 921 (Fed. Cir. 1990).

Judicial review is appropriate when a military correction ruling is arbitrary and capricious. *Ferrell v. Secretary of Defense*, 662 F.2d 1179 (5th Cir. 1981). In the instant case, the BCNR abused its discretion and acted in an arbitrary and capricious manner. As discussed below, the decisions were arbitrary and capricious both in their factual and legal interpretations as well as their application

12

of the law to facts.

As further discussed below, the BCNR's decision was contrary to the Constitution, laws and regulations of the United States. Plaintiff's liberty and property interests were implicated and the BCNR improperly failed to recognize them. They ignored flagrant violations of her Fifth and Sixth Amendment rights. Additionally, the findings of the BCNR decision were not supported by substantial evidence in the record.

Any deference granted to military decisions is lessened when, as here, the policies in question were not operational, strategic or tactical, and the mere fact of military context is insufficient to require deference. *Adair v. England*, 183 F.Supp.2d 31 (D. D.C.2002). The *Adair* Court noted that:

> the issues revolve around considerations that are not related to strictly military affairs or to the defense of the country. That is, the policies at issue here are designed to hire, retain, and promote chaplains to satisfy the religious needs of Navy service members. These policies relate to quality-of-life issues for military personnel and have no specific operational, strategic, or tactical objective.

*Adair*, 183 F.Supp.2d at 50. As in *Adair*, this case does not deal with operational, strategic or tactical decisions. It is, instead, a quality of life decision dealing with personnel matters. This Court should formally adopt the *Adair* standard to govern military personnel and administrative decisions.

13

As delineated herein, Roberts has stated a claim upon which relief can be granted and the administrative record supports summary judgment in her favor.

## I.    The Court Blow Erred in Their Finding That Roberts Did Not Enjoy a Due Process Right to a Fair Evaluation under the Navy's Fitness Report System.

As a threshold matter, Appellees in the court below and in their Motion for summary affirmance, argued that Commander Roberts must show a clear entitlement to promotion.  This is not the case and has never been the Appellant's claim.   Her entitlement is to a <u>proper evaluation</u>, pursuant to the existing regulations and not an automatic promotion.  Commander Roberts is guaranteed a right to a fair chance to compete.  That has not happened here.

It is well settled that entrance into the Armed Forces of the United States does not constitute the abandonment of constitutional and statutory protections. There is no question that the United States Constitution affords some protection from unfair or arbitrary administrative actions.  *Correa v. Clayton*, 563 F.2d 397, 399 (9th Cir. 1977).

Plaintiff has a liberty and property interest in her naval career.  The property interest in her employment and her liberty interest is her freedom to practice her chosen profession. Unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment, *Dent v. State of West*

14

*Virginia*, 129 U.S. 114 (1889); *Schware v. Board of Bar Examiners*, 353 U.S. 232

(1957); *Peters v. Hobby*, 349 U.S. 331, 352 (1955) (Douglass, J. concurring).

Additionally, property rights in government benefits, including employment

benefits, are based on statutory eligibility. *Goldberg v. Kelly*, 397 U.S. 254

(1970). In *Goldberg*, the Supreme Court held that statutory entitlement can give

rise to a property interest under the due process clause. This position was refined

by the Court in *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). The Supreme

Court said that a "legitimate claim of entitlement" was the key to determining if

there was a property interest. *Id*. Notably the court below found that Commander

Roberts had a legitimate and protected interest in the creation of her fitness report.

Doc. 24 at 12.

Commander Roberts certainly has an interest in the additional active duty

pay and future retirement pay that she would have received had she been promoted

properly. *See, Adkins v. Rumsfeld* 464 F.3d 456, 471 (4th Cir. ,2006), (retired

service members have a property interest in their military retirement pay);

*McDonald v. McLucas* 371 F.Supp. 831, 834 (D.N.Y., 1974) (plaintiffs had

property interest in the continuation of a missing member's pay and allowances).

Failure to comply with existing regulations is a violation of procedural due

process. Invidious discrimination is a violation of substantive due process. The

15

Federal Circuit has recently reiterated the need for such basic due process requirements. *Holley v. United States*, 124 F.3d 1462, 1469-70 (Fed. Cir. 1997).

It is well settled that the military's violation of its own regulations constitutes a violation of the Fifth Amendment right to due process of law. *Antonuk v. United States*, 445 F.2d 592 (6th Cir. 1971); *Parrish v. Brownlee*, 335 F. Supp. 2d 661, 669 (E.D.N.C. 2004). "It is ... well established that it is a denial of due process for any government agency to fail to follow its own regulations providing for procedural safeguards to persons involved in adjudicative processes before it." *Government of Canal Zone v. Brooks*, 427 F.2d 346, 347 (5th Cir. 1970).

Here the military reporting seniors and the BCNR spurned the local ONI directives, the BUPERS Instruction and even the DOD Directive governing equal opportunity. As an example, they failed to provide the counseling required by the BUPERS and ONI regulations. This is a blatant due process violation. Thus the Court should have grant plaintiff's Motion for Summary Judgment. *Antonuk v. United States*, *supra*.

The court below seemed to agree that a violation of regulations is a violation of due process and that regulations, such as the ones cited herein, give rise to the appropriate protected interest. The court then erred in finding that the

16

regulation in question, the Office of Naval Intelligence directives, left too much to

the discretion of the reporting senior to give rise to a protected interest.  The Court

below then ruled that the specific directive from the Office of Naval Intelligence

(ONI) was not sufficiently mandatory to a claim of entitlement.  This was clear

error.  The relevant portions of the ONI provide as follows:

> There are mandatory limits on the number of members that may be
> recommended for 'early promote' and 'must promote.'

and

> The promotion recommendation will be based on the individual trait
> average.

Appx. 63, 69.

The word "mandatory" in the first excerpt speaks for itself.  The limitations

are required and must be maintained.  The second excerpt is more germane to the

argument at hand, however.

The court's finding that the various directives of the Office of Naval

Intelligence (ONI) do not provide entitlement to due process violated accepted

canons of statutory construction.  These canons of statutory construction apply to

regulations.  *United Mine Workers of America, Intern. Union v. Dole* 870 F.2d

662, 668(D.C. Cir. 1989) (we must rely on the traditional tools of statutory

construction to determine whether these regulations fall within the statutory

17

definition).  The Supreme Court of the United States has held that "unless

otherwise defined, words will be interpreted as taking their ordinary,

contemporary, common meaning."  *Perrin v. United States*, 444 U.S. 37, 42

(1979).   The word "will," as found in the ONI directive, is used commonly in the

mandatory sense of "shall" or "must" and is considered a word of certainty.

*Black's Law Dictionary*, 6th Ed.  at 1598.   The use of the word "will" has been

judicially adjudicated to be mandatory.  *Britell v. United States,* 372 F.3d 1370,

1378 ( Fed. Cir 2004).  Thus the reporting seniors had no discretion in this matter.

They were required to match the promotion recommendation to the trait average.

If the trait averages were too high, there was no recourse but to adjust them.

Unfortunately, it is impossible to determine from the record whether or not an

officer received a higher promotion ranking with a trait average lower than

Commander Roberts.'  The findings of the court below, that the directives did not

mandate a certain promotion recommendation for certain trait averages, was

clearly erroneous as a matter of law.   The use of the word "will" is sufficiently

mandatory to bind the government and to give Roberts a clear claim of entitlement

for purposes of due process.

Additionally, there are other regulations that provide Commander Roberts

with a clear entitlement to a fair evaluation.  Article 1129 of U.S. Navy

18

Regulations, promulgated by the Secretary of the Navy, requires that records be maintained on naval personnel "which reflect their fitness for the service and performance of duties." BUPERS INSTRUCTION 1610.10 series provides reporting seniors with firm guidance concerning the preparation of fitness reports. Additionally, it codifies the general tenets of leadership and fairness that have historically been part of naval tradition and specifically incorporates Art. 1129 of Navy Regulations.

Notably, Commander Roberts did not receive required written, or even oral counseling. *See,* BUPERSINST 1610.10 ¶3, and enclosure (2) Annex C, http://www.lejeune.usmc.mil/2dfssg/med/files/Eval%20Inst.PDF. There was no indication that her performance had declined and her superiors did not document any deficiencies. By regulation, the Navy had granted CDR Roberts the right to notice and counseling as to any problems with her performance. The command failed to follow this guidance, thus depriving Commander Roberts of an important due process right.

Once the Navy decided to promulgate the implementing directives, they were required to abide by them. *Muse v. United States*, 21 Cl. Ct. 592 (1990). In *Muse*, the court noted that:

The failure of the rating officials to follow their own regulations was

19

legal error in this respect, and such error resulted in a report which should have been characterized as technically "adverse" under the regulations. This, in turn, caused yet another more serious legal error amounting to a deprivation of procedural due process.

*Muse*, 21 Cl. Ct. at 608.

As a matter of due process, these regulations give Roberts a Constitutional right of action to litigate the government's failure to comply with these directives. Consequently, this Court should reverse the District Court and remand for a decision on the merits.

## II.    The Court Below Erred in Their Finding That Roberts Did Not Assert an Actionable Claim of Gender Discrimination.

The due process clause of the Fifth Amendment contains an equal protection component which prohibits the United States from invidiously discriminating between individuals or groups. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). The standard for gender discrimination is articulated by *Vill. Of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S.252, 267 (1977). The *Arlington Heights* Court mentioned several methods of determining whether a discriminatory purpose was a motivating factor. *Arlington Heights*, 429 U.S. at 267-68. The Court suggested that the "specific sequence of events" leading up to the challenged decision might reveal a discriminatory purpose. Additionally, "[d]epartures from the normal procedural sequence" and "[s]ubstantive departures

20

too may be relevant," especially where the factors usually considered important by the decision makers are ignored. *Id*. at 267.  A plaintiff need not show that the challenged action rested solely on discriminatory purposes, only that the discriminatory purpose was a "motivating factor."*Id.* at 265-66.

The Federal Circuit articulated the following standard for federal personnel to articulate a claim:

> "[t]o state a claim for an equal protection violation, appellants must allege that a government actor intentionally discriminated against them on the basis of race, national origin or gender." *Hayden v. Nassau,* 180 F.3d 42, 48 (2d Cir.1999).

*Berkley v. United States*, 287 F.3d 1076, 1084 (Fed. Cir. 2002).  This Commander Roberts has done.  She has presented direct and concrete evidence, through her affidavit, that gender discrimination occurred.

In the instant case, the court below erred by not finding that the Appellant met the *Arlington Heights* standard.  There are certainly specific sequences of events from which discrimination can easily be inferred.  Commander Roberts was a consistent "early promote" throughout her joint tour.  Her performance trait averages were close to the maximum possible.  She was highly rated, in a combat environment, by her Commanding Officers and an Army General.  Then, at a time when a male officer needed a step up and a helping hand, her reports were

21

downgraded.  There was never any indication that the male officer performed well or that he had seen the extensive combat operations in Baghdad during the reporting period.  CDR Roberts was actually the only senior officer from her command to deploy into the war zone or to be a long term augmentee in the combat zone.  Her superiors and peers in the Green Zone held her in the highest esteem and were surprised at the promotion ranking.  The fact that she was the only officer of her grade under hostile fire makes the action of the  reporting senior even more dubious.

Here Commander Roberts and another female were graded below two males.  There was no gender neutral explanation given.  The asserted statement was that the reporting senior was trying to assist his "fellow" officers.  The use of the term "fellow" is one factor to consider in determining whether the ranking was based on invidious discrimination.  It is not the only factor. The court below did not consider or discuss other factors raised by Roberts that will be discussed later.

In her argument to the court below the Appellant contended that the use of the word "fellow" on its face is strong evidence of invidious discrimination since "fellow" is normally used in the male sense.  The court below disagreed, although the Webster's Third New Int'l Dictionary 836 (1993), cited by the Court noted that fellow can mean "companion, comrade, associate," and that the latter terms were

"used chiefly of men."   Doc. 24 at 18.  The Court then went on to reason that when used as an adjective, there is no such connotation.  *Id*.  Standing alone this might be persuasive, but in the instant case, the statement was made by a male in regards to other males.  Here the two officers ranked the highest were male and the two officers ranked the lowest were female.  Even assuming that the court's grammatical analysis had some merit, it was obvious that the two females were excluded from the fellowship.

It is at this point that the intermediate scrutiny standard of review, which was rejected by the court below, comes into play. This standard, articulated in *United States v. Virginia*, 518 U.S. 515 (1996), stands for the proposition that government actions based on gender discrimination are subject to "intermediate scrutiny."  The court below is correct in finding that *United States v. Virginia* was based on an official classification, but here the actions of the Commanding Office created a *de facto* official classification.

In the instant case, neither the BCNR nor the court below conducted an analysis to determine whether there was an important governmental objective and a means substantially related to achievement of that objective.  The governmental objective here is set by Department of Defense Directive 1350.2 which requires no gender discrimination.

23

Other factors discussed above provide even stronger corroboration that gender bias was a motivating factor. Although the court below concentrated on the use of the term "fellow" in finding that there was no gender discrimination, they ignored other salient corroborating factors. Notably, two male officers were rated above the two female officers. The fact that Commander Roberts was rated below two males who had not served in a combat area is another factor. Finally, the continued elevated promotion recommendations throughout her duties, both in Baghdad and afloat, by various officers of different services, is another.

It would be too much to expect that a reporting senior would actually and blatantly say that he was discriminating against a better qualified officer because she was a woman. No reporting senior is that stupid. Yet that seems to be the standard required by the court below. Certainly the government position is that the Commander Roberts' bar must be set too high to achieve. The fact that the reporting senior made the "fellow officer" comment is a tacit acknowledgment of the belief that he would not be held accountable for his actions. In some respects this comment was almost a taunt.

The record reflects that Commander Roberts was the only one of the four officers assigned to combat duty in Baghdad. She was assigned to the Green Zone at a time when it came under frequent attack from the insurgency. Showing

24

courage under fire, she performed her duties admirably. The two male officers, stationed state side did not have to worry about mortar or rocket attack and at most, risked a paper cut. In an organization where combat tours are considered the primary pathway to promotion, the higher rating of the staff officers is considered curious. This is especially true in the case of Commander Roberts' whose performance in Iraq was impressive. Appx. 54-55. If gender discrimination was not a motivating factor in this case, why else would the operationally experienced officer be shunted aside in favor of the less qualified administrators. If there was another reason than gender discrimination, then it should be developed by applying the intermediate scrutiny standard. Certainly an important government objective must be identified in order to evaluate whether the reporting senior's action was arbitrary and capricious.

The court below adopted a finding of the Chief of Naval Operations that the Commanding Officer did not exhibit a pattern of discrimination. Absent a full investigation, and there is no evidence of one in the Record, the Chief of Naval Operations' assertion that the reporting senior had not "demonstrated a pattern of gender discrimination," Appx. 56, is both curious and irrelevant. Since the Chief of Naval Operations (CNO) does not track fitness reports, they would not have any means of supporting that bald conclusion. Additionally, even if there was no

25

pattern, this single incidence of gender discrimination is sufficient to void the report.

Even a cursory investigation, however, shows strong evidence of questionable actions on the part of the Commanding Officer. Colonel Cubillo testified that the FITREP verbiage was consistent with previous fitness reports (where CDR Roberts was recommended for Early Promote and ranked #1 of assigned naval officers (O-5 grade/Commander rank). He further indicated that Roberts should have been rated as an "early promote" or "must promote" and that the reporting senior moved the two males ahead of her. Colonel Cubillo further stated that he had talked with the reporting senior concerning Roberts' superior performance. The two male officers in question worked for Cubillo. Appx. 54. By failing to identify a degradation or flaw in CDR Roberts' performance, through counselling or otherwise, the Reporting Senior ambushed Commander Roberts. Lacking any issue with performance, it is obvious that gender was a motivating factor.

The CNO opinion also invokes the wrong standard. Once the specter of invidious discrimination is raised, the burden shifts to the government to show that it did not occur or that it was necessary to serve an important objective. The important objective, as defined by DOD Directive 1350.2 is the elimination of

26

gender discrimination.  In no way can it be said that assisting "fellow" officers

supports this objective.  The CNO opinion is merely a summary dismissal of the

allegation without any analysis of the facts.   Consequently it should have been

given no weight by the court below in deciding this issue.

Accordingly, this Court should reverse the District Court and remand for a

proper analysis under the intermediate standard of review and require the

defendants to provide a non-discriminatory basis for ranking the two males above

the female in light of the experience and capabilities of each officer.  If no non-

discriminatory basis can be identified, the fitness report must be changed or

removed.

III.    **The Court Below Erred in Their Finding That the Actions of the Board
        for Correction of Naval Records Was Not Arbitrary and Capricious.**

The court below specifically found that they must apply an unusually

deferential application of the 'arbitrary or capricious' standard' of the

Administrative Procedure Act.  *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508

(D.C. Cir. 1989);  *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000).  While the

unusual deference makes sense in some situations, such as combat decisions,

deployment of forces, weapons selection and the Uniform Code of Military

Justice, the absence of a strategic, tactical or operational basis for the decision

27

calls into question the need for unusual deference.  In administrative matters, a

military department is like any other governmental agency.  As discussed in *Adair*,

*supra.*, purely administrative matters, including decisions to hire, fire and promote

should not be entitled to unusual deference.

Congress seemed to agree in their adoption of the Administrative

Procedures Act.  Specific areas of military operations were placed off limits.  This

included the adjudication and rule making provisions as well as courts-martial,

military commissions and military authority exercised in the field in time of war or

in occupied territories.  5 U.S.C. §§ 551, 556 and 557.  There is no evidence that

Congress intended further restrictions in the application of the APA to military

departments.

Although the court below found that the BCNR decision was not arbitrary

and capricious, it most certainly was even under the unusually deferential standard

of review for military cases.  While  "no uniform definition of [arbitrary and

capricious review] standard has emerged,"  it is "a highly deferential standard of

review." *Moberly ex rel. Moberly v. Secretary of Health and Human Services,* 85

Fed.Cl. 571, 595 (Fed.Cl. 2009).   To find that a decision was arbitrary and

capricious, the "Court must review whether a rational basis for the agency's

decision was lacking or a violation of an applicable regulation or procedure. . . "

28

*Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d

1324,1333 (Fed. Cir. 2001).

A reviewing court must evaluate the agency action to determine whether it

was based on the consideration of all relevant factors and whether there was a

clear error of judgment. *Motor Vehicles Mfrs. Ass'n of the United States v. State*

*Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983). Additionally, the agency must

articulate an explanation for its decision that rationally connects the facts and the

decision. *Id*. The standard to determine whether the actions of an agency are

arbitrary and capricious, was announced in *Milena Ship Management Company v.*

*R. Richard Newcomb*, 995 F.2d 620 (5th Cir. 1993). In *Milena Ship*, the Fifth

Circuit held that the decision must be reviewed to determine whether the agency

acted within its authority, adequately considered all the relevant factors, and

provided a reasoned basis for its decision. *Id*. at 623.

The District of Columbia court has adopted the definition of the Fourth

Circuit decision in *Hughes River Watershed Conservancy v. Johnson,* 165 F.3d

283, 287-88 (4th Cir.1999), which it cited as follows:

> The arbitrary and capricious standard has been defined this way:
> An agency's rule would be arbitrary and capricious if the agency
> relied on factors that Congress has not intended it to consider, entirely
> failed to consider an important aspect of the problem, offered an
> explanation for its decision that runs counter to the evidence before

the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Michigan Gambling Opposition (MichGO) v. Norton* 477 F.Supp.2d 1, 8 (D. D.C.,2007)

The BCNR and the court below did not consider all aspects of the problem or the relevant factors. Their decision was not reasoned. It was actually irrational. Here the BNCR merely rubber stamped the "advisory opinions" provided by the Navy. Appx. 43. While BCNR claimed to have considered the reclama of counsel to those advisory opinions, they failed to articulate an explanation as to why they rejected those arguments.

The court below opined that the plaintiff never provided authority for the proposition that the board needed to do more than state their agreement with the Advisory opinions. Such authority is found in 5 U.S.C. § 555(e) which requires a brief statement of reason for the denial of applications or petitions. This includes denials by military correction boards. *Roelofs v. Secretary of Air Force*, 628 F.2d 594 ( D. C. Cir. 1980).

The court below improperly rejected the "rubber stamp" argument, claiming that since the advisory opinion addresses the "fellow officer" comment, the BCNR was entitled to adopt the opinion. This is incorrect. First of all, the advisory opinion was in itself full of bald assertions without any support. Secondly the

30

advisory opinions are adversarial in nature, generated by the same organization

that is being charged with making a mistake.  It is not in the nature of

bureaucracies to admit such mistakes and without question, the advisory opinion

should not be considered standing alone.  For this reason, 10 U.S.C. § 1556 was

adopted to eliminate *ex parte* communications and to minimize the effect of the

"star chamber" proceedings of the BCNR.

In their September response to the advisory opinions, plaintiff *inter alia*: (1)

identified new and material evidence submitted (2) identified the gender (males)

of the "fellow" officers rated over Commander Roberts, (3) addressed the

argument concerning the lack of a "pattern of gender discrimination, (4) confirmed

the fact that the verbiage in previous reports was consistent with the 2005 report,

despite the degradation of the promotion recommendation and (5) demonstrated

that the advisory opinion cited the wrong standard for review of gender

discrimination.  There is no discussion of the response to the advisory opinion

Appx. 84-87.  Had this not been a "rubber stamp" such a discussion would

obviously have occurred.

The court below also relied upon the findings of the 2000 BCNR decision

for the proposition that the correction board had acted rationally and in a non-

arbitrary manner.   In doing so the court did not consider the statements of her

31

reporting senior, Captain Bentz, who admitted that he had erred due to
unfamiliarity with the changes in the new fitness report system.  Appx. 51-52.
These admissions were made in November of 2001 and June of 2004, after the
initial denial of Commander Roberts' petition.  Consequently the Court erred
because neither they nor the BCNR considered a very important aspect of the
problem - the confusion of the reporting senior and his admitted error.

    The 1997 fitness report did include a  comment  that the "promotable"
category did not reflect a decline in performance but that it was based on an
increase in the numbers in the rating category.   This was not the case, however, as
there were thirteen officers in the rating category in both 1996 and 1997.
Compare Appx. 60 with Appx. 58.  It is obvious that this erroneous comment was
discounted by selection boards as a attempt to protect a lower rated officer.

    The "promotable" mark dogged Commander Roberts through the next
reporting cycle with a new reporting senior.  Although her trait average fell to 3.83
(which often happens with a new reporting senior) she was still within the "must
promote" criteria of the revised local directive.  Appx. 79.  Although the number
of officers in the rating category increased to sixteen, she still remained in the
"promotable" category, because the new reporting senior wished to maintain all
officers in the same category during the abbreviated reporting period.  Appx. 45.

32

There was no explanation of where the three new officers were placed.

The Court found the evidence of a "freeze" unpersuasive but did not elaborate as to why they rejected the evidence.  Not only did Commander Roberts swear to the statement but there was no evidence in the record to contradict her. The evidence as outlined, *supra* supports Commander Roberts' testimony.

The government and the court below have repeatedly asserted that the desire of the reporting senior to help out his "fellow" officers was gender neutral. Assuming for the sake of this issue only that this was the case, it was still improper under the arbitrary and capricious provisions of the APA.  Art. 1129 of Navy Regulations and BUPERS INSTRUCTION 1610.10 provide strict guidance concerning officer evaluations.  Officers performance should be the criteria for assignment of grades and promotion recommendations.

In the case of the fitness reports authored by Captain Bentz, the justification for the ranking decision was that another officer, who had previously been rated below Commander Roberts, had improved significantly and had tied her in the trait average numbers calculation.  Nowhere was it said that this officer was now performing better than Commander Roberts.  Nor was there any indication that this officer's job was more difficult than Roberts.'  Captain Bentz merely wanted to give him  an "attaboy."   Appx. 49-50.

33

In the second case, the performance of Commander Roberts outlined *supra* was clearly superior. Here the reporting senior wanted to help out his "fellow" officers in their upcoming consideration by the September 2005 Commander Sea Screen Board.

Both decisions violated the spirit and letter of Navy Regulations and the BUPERS directive, which is *per se* arbitrary and capricious. "The military departments are bound to follow their own regulations in the same manner as any other federal agency. It is a basic tenet of our legal system that a government agency is not at liberty to ignore its own laws and that agency action in contravention of applicable statutes and regulations is unlawful." *Dilley v. Alexander*, 603 F.2d 914, 920 (D.C. Cir. 1979). When dealing with fitness reports, a violation of the regulations is also a due process violation. *Muse, supra.,* 21 Cl. Ct. at 608.

Consequently the actions of the BCNR were arbitrary and capricious. Accordingly the judgement below should be vacated and reversed.

**IV.    The Court Below Erred in Their Finding That the Actions of the Board for Correction of Naval Records Were Supported by Substantial Evidence.**

The court seemed to base its finding that the BCNR's decision was supported by substantial evidence on the excessive deference to the BCNR and

34

Navy's decision.  Again, the only evidence considered appeared to be the advisory opinions.

The court misreads the BCNR decision and the advisory opinion when they found that all of Commander Roberts' arguments were addressed.  Instead the advisory opinions consisted of bald unsupported assertions, such as the claim, without any supporting evidence, that there was no "pattern of gender discrimination."   They virtually ignored the letters from Captain Bentz and Captain Kirkpatrick or the investigation by retired NCIS Special Agent Kenneth Lord. Appx. 49-53.  They further ignored the fact that the officers ranked above Commander Roberts were males with less operational and combat zone experience.  Neither the advisory opinion, the BCNR or the court below considered the testimony of Colonel Cubillo.

The advisory opinions further raised a number of "red herrings" that were designed to divert attention from the actual issues.  They argued that Commander Roberts could have submitted a statement attached to the Fitness Report.  Such a statement is voluntary and is merely filed with the report with no procedure for obtaining relief.  Given the voluntary nature of such a statement, the fact that Commander Roberts did not bother with it is irrelevant.

The deferential standard of review owed to correction board decisions does

not excuse the Board from considering all of the relevant evidence and proffering

an explanation that establishes a "rational connection between the facts found and

the choice made." *Bowen v. American Hosp. Ass'n,* 476 U.S. 610, 626 (1986); *see*

*also*, *Marsh v. Oregon Natural Res. Council,* 490 U.S. 360, (1989)   A court "must

consider whether the [agency's] decision was based on a consideration of the

relevant factors and whether there has been a clear error of judgment."  *Id*.

"Substantial evidence has been defined innumerable times as more than a scintilla,

but less than a preponderance." *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th

Cir.1964).  The findings of the administrative agency should not be "mechanically

accepted" and the review under 5 U.S.C. § 706 does not require or contemplate the

rubber stamping of the agency's decision.  *Flack v. Cohen,* 413 F.2d 278, 279 (4th

Cir. 1969).  Substantial evidence constitutes such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

*Perales,* 402 U.S. 389, 401 (1971).  While the reviewing court cannot substitute its

judgment for the agency, it must take into account the weight of countervailing

evidence to ascertain whether the fact finder reached a reasonable conclusion.

*Renicker v. United States*, 17 C. Ct. 611 (1989).

     Neither the advisory opinions, BCNR or the court below points to any

evidence, substantial or otherwise, that counters the statements of Captains Bentz

and Kirkpatrick.  Notably the guiding directive provides definitive guidance concerning the promotability of officers assigned to that command.  For the June 1997 fitness report, Commander Roberts received a trait average of 4.33.  Appx. 44. Accordingly, she should have been given an "early promotion" recommendation.  Appx. 67.   For the October 1997 report, Commander Roberts earned a trait average of 3.83 from a new reporting senior.  Appx. 45.  Under the new directive, she should have been given a "must promote" recommendation. Appx. 79.

The court below concentrated their arguments on the percentage limitations placed on the "early promote" and "must promote" categories.  Such reliance is misplaced.  It is not the duty of the BCNR or the court to analyze the ranking of the other officers.  Nor it is the place of the BCNR or the Court to ignore portions of the directives.  The duty of the BCNR and the court is to ensure compliance with the regulations.  The administrative record does not reveal the trait averages of those who received higher promotion recommendations.  There is no evidence to support that other trait averages were higher than Commander Roberts.  The evidence in the record only reveals that the reporting seniors did not comply with the guiding directives, as they related to Commander Roberts, in both the June and October 1997 reports.  That is the issue in this case, and it was not addressed by

37

the BCNR or the court below.

The court below noted that the BCNR found that the difficulty of the assignment was a fair basis for evaluation.  Notably, BCNR abandoned that argument when discussing the 2005 fitness report.  During that reporting period, Commander Roberts was the only person in that rating group assigned inside a combat zone in direct support of military operations.  More importantly, however, Captain Bentz himself abrogated any such position, noticing that the promotion recommendation was based on a misunderstanding of the system.  Appx. 51-52.

In reviewing the claim of gender discrimination, the court below failed to recognize that both of the "fellow" officers ranked over Commander Roberts were male and that she had the most difficult and dangerous assignments.  Appx. 47. Given that she was the only officer assigned to the combat zone, the failure of the reporting senior to rank her appropriately speaks volumes.   Notably, the "fellows" did not go to Iraq.

Commander Roberts has presented direct and concrete evidence, through her affidavit, that gender discrimination occurred.   These actions are then subject an intermediate scrutiny, requiring an important governmental objective and a means substantially related to achievement of that objective.  *See, United States v. Virginia*, *supra*, 518 U.S. at 533.   Here neither the BCNR nor the defendant has

38

conducted such an analysis.  In the instant case, there is no important

governmental objective that would allow an unfair ranking of officers for

promotion, based on gender discrimination or for any other purpose.  Thus the

actions of the reporting senior, to help his "fellow" officers fails the intermediate

scrutiny analysis.  No evidence has been provided by the government to show that

the actions of the reporting senior support any type of governmental interest.  As

discussed below the opposite is true.  The gender discriminatory action of the

reporting senior actually violates DOD policy.

There is more to this case than a lowered average and the use of the term

"fellow."  The reduction in the promotion recommendation is just not consistent

with the increased trait average and her arduous tours in combat areas.

Accordingly it does not even pass the rational basis test.  The lack of similar

combat tours by the "fellows," who were male, and the stated decision to help

them out is strong evidence of an ulterior and invidious motive.  Even assuming

there was no gender discrimination, there was no rational basis to rank the other

officers above Commander Roberts.  Even if the intent to help "fellow" officers

had no gender bias, it was obvious that he was playing favorites and that

Commander Roberts was not considered a "fellow."  Such favoritism, irrespective

of motivation, flies in the face of Navy Regulations.  The testimony of Colonel

Cubillo coupled with the operational tours in and out of the Green Zone make

Commander Roberts the logical choice for the higher promotion recommendation.

The purpose of the armed forces is to fight and win wars - not to push paper.

Consequently the actions of the reporting senior were irrational.  The lack of

substantia evidence to support the lower court's position requires this Court to

reverse and remand.

**V.     The Court Below Erroneously Rejected a Special Selection Board.**

The court below found that a special selection board was not required

because the fitness reports and promotion recommendation were not modified.

Conversely, if the fitness reports were corrected or removed, a special selection

board would be required.

If the fitness reports were corrected or removed, the BCNR would have

been required to refer the matter to the Chief of Naval Operations (CNO).  The

referral to CNO is mandatory and not discretionary.  SECNAVINST 1420.1B

¶24(n)(2) states in pertinent part:

> The Board for Correction of Naval Records (BCNR) may, in
> appropriate cases, conclude that an individual's case warrants referral
> to a special selection board. *In order to ensure consistency and
> uniformity in the referral of cases to special selection boards, the
> BCNR shall refer all such cases to CNO or CMC, as appropriate*.
> CNO or CMC shall forward comments and recommendations
> concerning the particular case to the Director, BCNR. If the BCNR

concludes from the comments and recommendations that the case
warrants a special selection board, the BCNR shall refer the case,
including CNO or CMC comments and recommendations, to
SECNAV.  (Emphasis added).

http://doni.daps.dla.mil/Directives/01000%20Military%20Personnel%20Support/0

1-400%20Promotion%20and%20Advancement%20Programs/1420.1B.pdf.

It cannot be said that referral to the CNO Equal Opportunity section (N134)

fulfills the requirement.  Appx. 83.  Notably that memo does not address an SSB

and the N134 section would have no jurisdiction over the 1996 fitness reports.

CNO, or OPNAV as it is commonly called, is a large Echelon One

command consisting of many sections.  Personnel matters are assigned to the

Deputy Chief of Naval Operations for Manpower, Personnel, Training and

Education (DCNO MPTE) (N1) rather than the equal opportunity office.  The

DCNO MPTE is also the Chief of Naval Personnel. (CHNAVPERS).  *See,*

http://www.navy.mil/navydata/leadership/cnp_resp.asp.  From the header of the

directive it appears that the correct office would be N132F/PERS 48.[3]  The record

does not reflect any such referral.

Additionally, the request to the BCNR was a request to the Secretary of the

Navy.  10 U.S.C. § 1552(a)(1), the BCNR enabling statute  states in pertinent part:

---

[3]  N132 would be the DCNO designation and PERS 48 the CHNAVPERS designation.
They may be the same physical office.

41

The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided in paragraph (2), such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department.

Consequently, since a request was made and denied the plaintiff has fulfilled the requirements of 10 U.S.C. § 628.

Accordingly, this court should remand the matter to the District Court for a referral to a special selection board.

## Conclusion

For the reasons delineated herein, the decision of the court below should be reversed and remanded for further proceedings

Respectfully Submitted,

//s// John B. Wells
John B. Wells
Attorney for Appellant
LA Bar #23970
P. O. Box 5235
Slidell, LA 70469-5235
769 Robert Blvd, Suite 201D
Slidell, LA 70458
985-641-1855
985-649-1536 (fax)

## CERTIFICATE OF SERVICE

I, John B, Wells, do hereby certify that I have this date served via the

Court's EC/CMF system, a true and exact copy of this brief to the court and to

Alexander Shoaibi, Assistant United States Attorney, Judiciary Center Building -

Civil Division, 555 Fourth Street, NW Room E 4218, Washington DC this 11th day

of December, 2012.

//s// John B. Wells
John B. Wells

43

## CERTIFICATE OF COMPLIANCE

The brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9202 words by computer word count, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a monospaced typeface using Wordperfect 8.0 with 14-point proportionally spaced face.

//s// John B. Wells
John B. Wells

# STATUTORY ADDENDUM

## 5 U.S.C. § 555

(a) This section applies, according to the provisions thereof, except as otherwise provided by this subchapter.

(b) A person compelled to appear in person before an agency or representative thereof is entitled to be accompanied, represented, and advised by counsel or, if permitted by the agency, by other qualified representative. A party is entitled to appear in person or by or with counsel or other duly qualified representative in an agency proceeding. So far as the orderly conduct of public business permits, an interested person may appear before an agency or its responsible employees for the presentation, adjustment, or determination of an issue, request, or controversy in a proceeding, whether interlocutory, summary, or otherwise, or in connection with an agency function. With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it. This subsection does not grant or deny a person who is not a lawyer the right to appear for or represent others before an agency or in an agency proceeding.

© Process, requirement of a report, inspection, or other investigative act or demand may not be issued, made, or enforced except as authorized by law. A person compelled to submit data or evidence is entitled to retain or, on payment of lawfully prescribed costs, procure a copy or transcript thereof, except that in a nonpublic investigatory proceeding the witness may for good cause be limited to inspection of the official transcript of his testimony.

(d) Agency subpenas authorized by law shall be issued to a party on request and, when required by rules of procedure, on a statement or showing of general relevance and reasonable scope of the evidence sought. On contest, the court shall sustain the subpena or similar process or demand to the extent that it is found to be in accordance with law. In a proceeding for enforcement, the court shall issue an order requiring the appearance of the witness or the production of the evidence or data within a reasonable time under penalty of punishment for contempt in case of contumacious failure to comply.

(e) Prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection

46

with any agency proceeding. Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial.

## 5 U.S.C. § 706

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall–

(1) compel agency action unlawfully withheld or unreasonably delayed; and
(2) hold unlawful and set aside agency action, findings, and conclusions found to be--
    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
    (B) contrary to constitutional right, power, privilege, or immunity;
    © in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
    (D) without observance of procedure required by law;
    (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
    (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

## 10 U.S.C. § 628

(a) Persons not considered by promotion boards due to administrative error.--
    (1) If the Secretary of the military department concerned determines that because of administrative error a person who should have been considered for selection for promotion from in or above the promotion zone by a promotion board was not so considered, or the name of a person that should have been placed on an

all-fully-qualified-officers list under section 624(a)(3) of this title was not so placed, the Secretary shall convene a special selection board under this subsection to determine whether that person (whether or not then on active duty) should be recommended for promotion.

(2) A special selection board convened under paragraph (1) shall consider the record of the person whose name was referred to it for consideration as that record would have appeared to the board that should have considered him. That record shall be compared with a sampling of the records of those officers of the same competitive category who were recommended for promotion, and those officers who were not recommended for promotion, by the board that should have considered him.

(3) If a special selection board convened under paragraph (1) does not recommend for promotion a person whose name was referred to it for consideration for selection for appointment to a grade other than a general officer or flag officer grade, the person shall be considered to have failed of selection for promotion.

(b) Persons considered by promotion boards in unfair manner.--

(1) If the Secretary of the military department concerned determines, in the case of a person who was considered for selection for promotion by a promotion board but was not selected, that there was material unfairness with respect to that person, the Secretary may convene a special selection board under this subsection to determine whether that person (whether or not then on active duty) should be recommended for promotion. In order to determine that there was material unfairness, the Secretary must determine that--

(A) the action of the promotion board that considered the person was contrary to law in a matter material to the decision of the board or involved material error of fact or material administrative error; or

(B) the board did not have before it for its consideration material information.

(2) A special selection board convened under paragraph (1) shall consider the record of the person whose name was referred to it for consideration as that record, if corrected, would have appeared to the board that considered him. That record shall be compared with the records of a sampling of those officers of the same competitive category who were recommended for promotion, and those officers who were not recommended for promotion, by the board that considered him.

(3) If a special selection board convened under paragraph (1) does not recommend for promotion a person whose name was referred to it for consideration, the person incurs no additional failure of selection for promotion.

© Reports of boards.--

(1) Each special selection board convened under this section shall submit to the Secretary of the military department concerned a written report, signed by each member of the board, containing the name of each person it recommends for promotion and certifying that the board has carefully considered the record of each person whose name was referred to it.

(2) The provisions of sections 617(b) and 618 of this title apply to the report and proceedings of a special selection board convened under this section in the same manner as they apply to the report and proceedings of a selection board convened under section 611(a) of this title. However, in the case of a board convened under this section to consider a warrant officer or former warrant officer, the provisions of sections 576(d), 576(f), and  of this title (rather than the provisions of sections 617(b) and 618 of this title) apply to the report and proceedings of the board in the same manner as they apply to the report and proceedings of a selection board convened under section 573 of this title.

(d) Appointment of persons selected by boards.--

(1) If the report of a special selection board convened under this section, as approved by the President, recommends for promotion to the next higher grade a person whose name was referred to it for consideration, that person shall, as soon as practicable, be appointed to that grade in accordance with subsections (b), ©, and (d) of section 624 of this title. However, in the case of a board convened under this section to consider a warrant officer or former warrant officer, if the report of that board, as approved by the Secretary concerned, recommends that warrant officer or former warrant officer for promotion to the next higher grade, that person shall, as soon as practicable, be appointed to the next higher grade in accordance with provisions of section 578© of this title (rather than subsections (b), ©, and (d) of section 624 of this title).

(2) A person who is appointed to the next higher grade as the result of the recommendation of a special selection board convened under this section shall, upon that appointment, have the same date of rank, the same effective date for the pay and allowances of that grade, and the same position on the active-duty list as

49

he would have had if he had been recommended for promotion to that grade by the board which should have considered, or which did consider, him. In the case of a person who is not on the active-duty list when appointed to the next higher grade, placement of that person on the active-duty list pursuant to the preceding sentence shall be only for purposes of determination of eligibility of that person for consideration for promotion by any subsequent special selection board under this section.

(e) Deceased persons.–  If a person whose name is being considered for referral to a special selection board under this section dies before the completion of proceedings under this section with respect to that person, this section shall be applied to that person posthumously.

(f) Convening of boards.--A board convened under this section–

(1) shall be convened under regulations prescribed by the Secretary of Defense;

(2) shall be composed in accordance with section 612 of this title or, in the case of board to consider a warrant officer or former warrant officer, in accordance with section 573 of this title and regulations prescribed by the Secretary of the military department concerned; and

(3) shall be subject to the provisions of section 613 of this title.

(g) Judicial review.--

(1)

(A) A court of the United States may review a determination by the Secretary of a military department under subsection (a)(1) or (b)(1) not to convene a special selection board in the case of any person. In any such case, the court may set aside the Secretary's determination only if the court finds the determination to be–

(i) arbitrary or capricious;

(ii) not based on substantial evidence;

(iii) a result of material error of fact or material administrative error; or

(iv) otherwise contrary to law.

(B) If a court sets aside a determination by the Secretary of a military department not to convene a special selection board under this section, it shall remand the case to the Secretary concerned, who shall provide for consideration by such a board.

(2) A court of the United States may review the action of a special selection board convened under this section or an action of the Secretary of the military department concerned on the report of such a board. In any such case, a court may set aside the action only if the court finds that the action was–

(A) arbitrary or capricious;

(B) not based on substantial evidence;

© a result of material error of fact or material administrative error; or

(D) otherwise contrary to law.

(3)

(A) If, six months after receiving a complete application for consideration by a special selection board under this section in any case, the Secretary concerned has not convened such a board and has not denied consideration by such a board in that case, the Secretary shall be deemed for the purposes of this subsection to have denied the consideration of the case by such a board.

(B) If, six months after the convening of a special selection board under this section in any case, the Secretary concerned has not taken final action on the report of the board, the Secretary shall be deemed for the purposes of this subsection to have denied relief in such case.

© Under regulations prescribed under subsection (j), the Secretary of a military department may waive the applicability of subparagraph (A) or (B) in a case if the Secretary determines that a longer period for consideration of the case is warranted. Such a waiver may be for an additional period of not more than six months. The Secretary concerned may not delegate authority to make a determination under this subparagraph.

(h) Limitations of other jurisdiction.--No official or court of the United States may, with respect to a claim based to any extent on the failure of a person to be selected for promotion by a promotion board–

(1) consider the claim unless the person has first been referred by the Secretary concerned to a special selection board convened under this section and acted upon by that board and the report of the board has been approved by the President; or

(2) except as provided in subsection (g), grant any relief on the claim unless the person has been selected for promotion by a special selection board convened under this section to consider the person for recommendation for promotion and

the report of the board has been approved by the President.

(i) Existing jurisdiction.--Nothing in this section limits–

(1) the jurisdiction of any court of the United States under any provision of law to determine the validity of any law, regulation, or policy relating to selection boards; or

(2) the authority of the Secretary of a military department to correct a military record under section 1552 of this title.

(j) Regulations.--

(1) The Secretary of each military department shall prescribe regulations to carry out this section. Regulations under this subsection may not apply to subsection (g), other than to paragraph (3)© of that subsection.

(2) The Secretary may prescribe in the regulations under paragraph (1) the circumstances under which consideration by a special selection board may be provided for under this section, including the following:

(A) The circumstances under which consideration of a person's case by a special selection board is contingent upon application by or for that person.

(B) Any time limits applicable to the filing of an application for such consideration.

(3) Regulations prescribed by the Secretary of a military department under this subsection may not take effect until approved by the Secretary of Defense.

(k) Promotion board defined.--In this section, the term "promotion board" means a selection board convened by the Secretary of a military department under section 573(a) or 611(a) of this title.

## 10 U.S.C. § 1552

(a)

(1) The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided in paragraph (2), such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department. The Secretary of Homeland Security may in the same manner correct any military record of the Coast Guard.

(2) The Secretary concerned is not required to act through a board in the case of the correction of a military record announcing a decision that a person is

52

not eligible to enlist (or reenlist) or is not accepted for enlistment (or reenlistment) or announcing the promotion and appointment of an enlisted member to an initial or higher grade or the decision not to promote an enlisted member to a higher grade. Such a correction may be made only if the correction is favorable to the person concerned.

(3) Corrections under this section shall be made under procedures established by the Secretary concerned. In the case of the Secretary of a military department, those procedures must be approved by the Secretary of Defense.

(4) Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States.

(b) No correction may be made under subsection (a)(1) unless the claimant or his heir or legal representative files a request for the correction within three years after he discovers the error or injustice. However, a board established under subsection (a)(1) may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice.

©

(1) The Secretary concerned may pay, from applicable current appropriations, a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits, or for the repayment of a fine or forfeiture, if, as a result of correcting a record under this section, the amount is found to be due the claimant on account of his or another's service in the Army, Navy, Air Force, Marine Corps, or Coast Guard, as the case may be, or on account of his or another's service as a civilian employee.

(2) If the claimant is dead, the money shall be paid, upon demand, to his legal representative. However, if no demand for payment is made by a legal representative, the money shall be paid–

(A) to the surviving spouse, heir, or beneficiaries, in the order prescribed by the law applicable to that kind of payment;

(B) if there is no such law covering order of payment, in the order set forth in section 2771 of this title; or

© as otherwise prescribed by the law applicable to that kind of payment.

(3) A claimant's acceptance of a settlement under this section fully satisfies the claim concerned. This section does not authorize the payment of any claim compensated by private law before October 25, 1951.

53

(4) If the correction of military records under this section involves setting aside a conviction by court-martial, the payment of a claim under this subsection in connection with the correction of the records shall include interest at a rate to be determined by the Secretary concerned, unless the Secretary determines that the payment of interest is inappropriate under the circumstances. If the payment of the claim is to include interest, the interest shall be calculated on an annual basis, and compounded, using the amount of the lost pay, allowances, compensation, emoluments, or other pecuniary benefits involved, and the amount of any fine or forfeiture paid, beginning from the date of the conviction through the date on which the payment is made.

(d) Applicable current appropriations are available to continue the pay, allowances, compensation, emoluments, and other pecuniary benefits of any person who was paid under subsection ©, and who, because of the correction of his military record, is entitled to those benefits, but for not longer than one year after the date when his record is corrected under this section if he is not reenlisted in, or appointed or reappointed to, the grade to which those payments relate. Without regard to qualifications for reenlistment, or appointment or reappointment, the Secretary concerned may reenlist a person in, or appoint or reappoint him to, the grade to which payments under this section relate.

(e) No payment may be made under this section for a benefit to which the claimant might later become entitled under the laws and regulations administered by the Secretary of Veterans Affairs.

(f) With respect to records of courts-martial and related administrative records pertaining to court-martial cases tried or reviewed under chapter 47 of this title (or under the Uniform Code of Military Justice (Public Law 506 of the 81st Congress)), action under subsection (a) may extend only to--
    (1) correction of a record to reflect actions taken by reviewing authorities under chapter 47 of this title (or under the Uniform Code of Military Justice (Public Law 506 of the 81st Congress)); or
    (2) action on the sentence of a court-martial for purposes of clemency.

(g) In this section, the term "military record" means a document or other record that pertains to (1) an individual member or former member of the armed forces, or (2) at the discretion of the Secretary of the military department concerned, any

54

other military matter affecting a member or former member of the armed forces, an employee or former employee of that military department, or a dependent or current or former spouse of any such person. Such term does not include records pertaining to civilian employment matters (such as matters covered by title 5 and chapters 81, 83, 87, 108, 373, 605, 607, 643, and 873 of this title

## 10 U.S.C. § 1556

(a) In general.--The Secretary of each military department shall ensure that an applicant seeking corrective action by the Army Review Boards Agency, the Air Force Review Boards Agency, or the Board for Correction of Naval Records, as the case may be, is provided a copy of all correspondence and communications (including summaries of verbal communications) to or from the agency or board, or a member of the staff of the agency or board, with an entity or person outside the agency or board that pertain directly to the applicant's case or have a material effect on the applicant's case.

(b) Exceptions.--Subsection (a) does not apply to the following:

(1) Classified information.

(2) Information the release of which is otherwise prohibited by law or regulation.

(3) Any record previously provided to the applicant or known to be possessed by the applicant.

(4) Any correspondence that is purely administrative in nature.

(5) Any military record that is (or may be) provided to the applicant by the Secretary of the military department or other source.

## 28 U.S.C. § 1291

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292© and (d) and 1295 of this title.

## 28 U.S.C. § 1331

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

## U. S. CONST. AMND. V

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

## U. S. CONST. AMND. VI

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.